[Civ. No. 5940.   Third Appellate District.—July 25, 1938.]

THE PEOPLE, Respondent, v. PACIFIC GAS & ELECTRIC COMPANY (a Corporation) et al., Defendants; GEORGE A. CLOUGH et al., Appellants.

George A. Clough, *in pro. per.*, and Pugh & Pugh for Appellants.

Clarence W. Morris and Clifford D. Good for Respondent.

PULLEN, P. J.—This is an action brought originally for the purpose of condemning the interest of appellants in certain lands formerly belonging to the Pacific Gas & Electric Company, a corporation, upon which George A. Clough held for himself, and as trustee for Nellie Brown Clough, his wife, A. H. Clough and Mabel B. Clough, his brother's wife, an executory contract to purchase.

After such action was commenced appellants took title from the Pacific Gas & Electric Company, and subsequent thereto and before the trial of this action, the Cloughs sold the property involved, reserving for themselves four acres of land

situated in the intersection of the road from Red Bluff to Chester with the road from Chico to Chester, which latter road necessitated the instant action in condemnation.

Appellants herein, upon their sale of the land, also reserved unto themselves the right to prosecute this condemnation suit against the state of California, and the right to collect all moneys recovered therefrom.

The matter was submitted to a jury to determine the value of the interest of the Cloughs in the property sought to be condemned, the damage accruing to the portion not sought to be condemned by reason of its severance from the portion sought to be condemned and the construction of the improvement in the manner proposed by plaintiff, and how much that portion not sought to be condemned was benefited by the construction of the improvement.

In the deed from the Pacific Gas & Electric Company to George A. Clough was a reservation of an easement on behalf of the Pacific Gas & Electric Company permitting it to flood these lands upon payment to the Cloughs of the sum of $10 an acre, and for the payment of all buildings erected on the property by the Cloughs not to exceed $5,000. It was agreed, however, that the Pacific Gas & Electric Company would not avail itself of this privilege until such time as it or its assigns should propose in good faith to go forward with the construction of a project which would occasion the flooding of this property.

While the Pacific Gas & Electric Company had title to the property, and before any transaction was had with the Cloughs the Pacific Gas & Electric Company, on the 29th of May, 1931, deeded to the county of Butte, a right of way for construction, maintenance and use of a public highway 100 feet wide purporting to be in the same general vicinity as the highway now the subject of this condemnation.

The deed identified the right of way sought to be conveyed by reference to a monument, to wit: an existing road entering at the west line of the property, and likewise by reference to a monument where the road was supposed to leave the property at the northerly side thereof.

The jury returned a verdict finding that the value of the land sought to be condemned, consisting of 14.09 acres, was $470, allowed $2,335 by reason of severance damage and found the benefit accruing to the property not sought to be

condemned as $2,285. Upon this verdict a judgment was entered, from which these defendants appeal.

As grounds for appeal it is urged, first, that the deed from the Pacific Gas & Electric Company to Butte County is void because of defective description, and that the admission of such deed and testimony relating thereto was reversible error; that the court erred in admitting into the record evidence as to what effect the reservation of the right of the Pacific Gas & Electric Company to flood the land under the conditions specified in the deed had upon the value of the land, and the admission of evidence of value upon the assumption that the Pacific Gas & Electric Company had the right to repurchase at $10 an acre; admission of evidence of value based upon evidence of the listing price of a certain four-acre tract, and the refusal to strike out certain testimony of witness Hart as an expert on value.

The first point urged, that the deed from the Pacific Gas & Electric Company to Butte County was void because of defective description was argued at considerable length. The deed called for a strip 100 feet wide lying 50 feet on each side of the center line of the old road, which entered the property here in question on the west boundary. It is claimed by appellants that there were two roads running through Deer Creek meadow and entering the property at about the same point, and that it was impossible to ascertain which of these two old roads was intended in the deed. The deed further provided that the strip in question ran from the point of beginning as indicated above to a point on the northerly boundary line in the southwest one-quarter of the northwest one-quarter of section 22. Appellants contend that there is not and never was a road leaving the property through the subdivision line called for in the deed.

Appellants claim that they were prejudiced by plaintiff parading this deed before the jury whereby the jury were given the false idea of the rights of the defendants to the ownership and condition of the property. Many specifications of error are based upon this evidence. It should be noted, however, that all matters referring to this road came up on cross-examination, and there is no doubt that the greatest latitude is permitted on cross-examination to permit counsel and the jury to know what factors were taken into consideration in fixing the values to which the witness testified.

(*City of Los Angeles* v. *Deacon,* 119 Cal. App. 491 [7 Pac. (2d) 378].) In each of these questions here complained of the cross-examiner was endeavoring to ascertain the factors which the experts for the defendants took into consideration in arriving at their valuation.

The point relied upon by appellants is that there were two "old roads" answering the description as set forth in the deed from the Pacific Gas & Electric Company to Butte County. That there was such a definite existing road as called for in the deed was established by the testimony of several witnesses. Erle Gans, a witness called by the defendants, testified that the property "was benefited by the highway; there was an old road there before". Roy Owen, a witness called on behalf of defendants, upon cross-examination, testified as follows: "Mr. Good: By the way there was an old road across there, wasn't there, before the highway went through? A. Yes." Mr. Frank P. Childs, a witness called upon behalf of defendants, testified that there was no old wagon road through the meadow until the forest service built one to Round Valley. On cross-examination he was asked: "Did you ever go across this old road that comes in here at the old Lassen trail and winds its way across the meadow part of that property and eventually went out on the west side of it? A. Yes, I have been there when there wasn't any road; it was called the Lassen trail. There was no wagon road there until the Forest Service built the road into Little Round Valley." It appears from the record that this road was repaired by the forest service and in use prior to the deed to the county of Butte from the Pacific Gas & Electric Company.

Mr. A. H. Clough testified that about 1932, the forest service graded Lassen trail through the valley, fixed it up at the impassable places so that in case of forest fire, machines could go over it, but that it was very rough and no one traveled it beyond Lost Camp, about twenty-five miles from the valley. There were several gates across the road which had been maintained for at least twenty-two years.

Mr. McKenzie, a witness called on behalf of the defendants, testified, however, that there was a road across the old Lassen trail and that about ten years before the date of the trial he had driven across the trail and that it was open at that time, and that people had been driving sheep and cattle

across the Lassen trail, which is substantially the same location with respect to the Clough property as the new highway, and that the Lassen trail had been in use for twenty years prior to the date of the trial, and to his recollection it was never closed.

Mr. George A. Clough, a witness on behalf of defendants, testified that there never was a county road through the property along the old Lassen trail, and the Lassen trail was not and never had been a county road, and had only been made passable for conveyances within recent years. He also testified that there were two roads entering the property about 100 feet apart, and that they paralleled each other in a general course, although at times crossing and re-crossing each other. He further testified that about 1931 or 1932 the forest service completed a road following in a general way the old Lassen trail all the way down to the valley. The Cloughs gave deeds to the forest service containing reservations which would prevent such road becoming a public or county road, and for the public to use said road it was necessary to obtain permission from the forest service, the Cone-Ward Company and the Cloughs.

There seemed to be some attempt on the part of the witness to construe the road referred to in the deed from the Pacific Gas & Electric Company as a county road, but the reference therein was to an existing road. That such a road was in existence is clearly evidenced by the foregoing testimony. Some reference is made by certain of the witnesses to another road, but other witnesses referred to but one road, and the jury having found that there was an existing road negatives the idea that there was another road. Furthermore, the court and jury viewed the premises and had visual evidence as to whether or not there was an existing road following the general course outlined in the deed in question.

The court and jury, having heard the testimony as to the conflict as to the existence of more than one road answering the calls in the deed, and having viewed the premises and determined that there was an existing road as set forth in the deed, that fact became established, and we cannot, from the record, say that such finding is not properly supported. Therefore, the deed was properly admitted in evidence.

The next point urged by appellant is that the court erred in admitting in evidence the effect of the right to flood the meadows upon the values of the lands in question.

Upon cross-examination, witnesses for defendants were asked what effect such reservations would have on the value of the land taken by the highway. Defendants claim that Pacific Gas & Electric Company never had or could have the right to flood this property because certain lands in the meadow belonged to a Mr. Smith, not a party to the deed, and the Cloughs' property could not be flooded without affecting the Smith property, and until they had acquired that property they had no right to flood the property of the Cloughs. We believe, however, this line of examination was proper. The deed definitely gave to the Pacific Gas & Electric Company the right to flood the lands of the Cloughs upon the payment of $10 an acre providing the company did not avail itself of this right until such time as it or its assigns proposed in good faith to go forward with the construction of a project which would occasion the flooding of the property. The fact that other property in the meadow belonging to others would be flooded, is not material. The Pacific Gas & Electric Company is given the right of condemnation by the state of California. It could condemn the Smith property and Smith would receive as compensation whatever a jury might award. In the case of the Cloughs the compensation was by deed set at $10 an acre. Appellants cite *City of Pasadena* v. *Union Trust Co.*, 138 Cal. App. 21 [31 Pac. (2d) 463], which decided that a defendant could not claim the highest and best use of his land was for reservoir purposes if the defendant did not own all of the land necessary for a reservoir site. That is not the question here involved. The Cloughs had by agreement bound themselves to convey an interest in the land to the Pacific Gas & Electric Company, at a fixed price, which fact the jury had a right to note and consider. It will be recalled, too, that all this was developed on cross-examination.

Objection is also made to the fact that evidence was admitted as to the listing price of a four-acre tract lying at the junction of the two highways. On cross-examination counsel asked a witness on value if he took into consideration in fixing the value the fact that Mr. Clough had reserved four acres at the intersection of the Chico-Deer Creek highway with the Red Bluff-Chico highway, which he had listed for sale for $4,000. Of another witness the question was asked on cross-examination, if the witness thought that the particular

four-acre tract in question had been·benefited by the improvement. We do not believe that this line of examination was subject to objection. Wide latitude should be allowed on cross-examination inquiring of expert witnesses the reason for their conclusions. (*County of San Mateo* v. *Christen,* 22 Cal. App. (2d) 375 [71 Pac. (2d) 88]; *Estate of Ross,* 171 Cal. 64 [151 Pac.· 1138]; *San Diego Land & Town Co.* v. *Neale,* 88 Cal. 50 [25 Pac. 977, 11 L. R. A. 604]; *Spring Valley Water Works* v. *Drinkhouse,* 92 Cal. 528 [28 Pac. 681].)

As stated in *East Bay Mun. Utility Dist.* v. *Kieffer,* 99 Cal. App. 240 [278 Pac. 476, 279 Pac. 178]: ''When an appellate court is called upon to decide whether such discretion has been abused, the inquiry is whether a sufficiently wide range has been allowed to test such credibility and weight rather than when some particular question should have been allowed.''

In regard to the listing price of certain property, it was held in the case of *City of Los Angeles* v. *Deacon, supra,* that upon cross-examination such matters were proper.

E. L. Hart, a state inheritance tax appraiser of Tehama County, was called on behalf of plaintiff as a witness on value. Appellants charged he was not qualified as an expert on values of cattle ranches, and that the court erred in permitting him to testify. Reading the testimony of Mr. Hart, it appears that for twelve years he had been an inheritance tax appraiser of Tehama County, and during that time had examined and appraised all types of property— real property, personal property, city property and stock range property. It also appeared that he had at one time acted as bookkeeper for a corporation which owned and operated a cattle ranch. In his investigation of the Clough property he had driven across the property and had walked over certain portions of it and also viewed the same from the highway. Primarily, the court must pass upon the qualifications of an expert witness; the trial court held he was qualified. The testimony shows that the witness was qualified to give his opinion as an expert on the values of range land, although the weight to be given that testimony was a matter for the jury. We find no error in the rulings of the court.

We believe that the foregoing has covered the principal points urged by appellants for reversal. We find no error,

and the judgment should be affirmed. It is so ordered. Appellants to recover costs.

Thompson, J., concurred.